UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------X

United States of America,

                               Plaintiff,

        - against -

Bruce Hodges

                               Defendant.

-------------------------------------------X

07-CR-706
(CPS)

MEMORANDUM
OPINION AND
ORDER

SIFTON, Senior Judge.

On September 14, 2007, Bruce Hodges (the "defendant") was indicted on one count of heroin importation, one count of conspiracy to import heroin, one count of attempted possession of heroin and one count of conspiracy to possess heroin. Defendant pled guilty on January 28, 2008 to a lesser-included offense within Count One of the indictment, charging him with conspiracy to import an unspecified amount of heroin into the United States, in violation of 21 U.S.C. § 963. Defendant is presently before this Court for sentencing. For the reasons that follow, I will consider a non-Guideline sentence for defendant.

## DISCUSSION

The Supreme Court held in *United States v. Booker*, 543 U.S. 220 (2005), that the mandatory nature of the United States Sentencing Guidelines violated the Sixth Amendment. In its remedy opinion, the Court severed 18 U.S.C. § 3553(b)(1), which had rendered the Guidelines binding on federal sentences. *Id.* at

764.  This left 18 U.S.C. § 3553(a) in effect.[1]

In a series of recent decisions, the Supreme Court and the Second Circuit confirmed that under the advisory Guidelines regime, "a sentencing judge has very wide latitude to decide the proper degree of punishment for an individual offender and a particular crime." *United States v. Cavera*, 550 F.3d 180, 188 (2d Cir. 2008); *see also generally Gall v. United States*, 128 S.Ct. 586 (2007); *Kimbrough v. United States*, 128 S.Ct. 558 (2007); *Rita v. United States*, 551 U.S. 338 (2007). Nevertheless, the sentencing judge must comply with certain procedural requirements.  First, the judge must calculate the

---

[1] 18 U.S.C. § 3553(a) provides as follows:

The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider-
> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed-
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>> (B) to afford adequate deterrence to criminal conduct;
>> (C) to protect the public from further crimes of the defendant; and
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
> (3) the kinds of sentences available;
> (4) the kinds of sentence and the sentencing range established for-
>> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . ;
> (5) any pertinent policy statement-
>> (A) issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28, United States Code, subject to any amendments made to such policy statements by act of Congress . . .
> (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and
> (7) the need to provide restitution to any victims of the offense.

applicable Sentencing Guidelines range after making such factual findings as are necessary. *United States v. Crosby*, 397 F.3d 103, 111-12 (2d Cir. 2005); *Cavera*, 550 F.3d at 189. The court must then consider the Guidelines range, together with applicable policy statements issued by the Sentencing Commission, as required by § 3553(a)(5). *Crosby*, 397 F.3d at 112. The court may not presume that the Guidelines sentence is reasonable, but "must instead conduct its own independent review of the sentencing factors, aided by that arguments of the prosecution and the defense." *Cavera*, 550 F.3d at 189. In addition, "a district court may vary from the Guidelines range based solely on a policy disagreement with the Guidelines, even where that disagreement applies to a wide class of offenders or offenses." *Id.* at 191. After considering the Guidelines range, the court must consider the relevant factors listed in § 3553(a). *Crosby*, 397 F.3d at 112-13. Finally, the court must explain the reasons for its chosen sentence, including an explanation for any deviation from the Guidelines range. *Cavera*, 550 F.3d at 190.

<u>Characteristics of the Defendant</u>

The following facts are drawn from the defendant's Presentence Investigation Report ("PSR") and the parties' submissions in connection with this matter. They are undisputed except where noted.

Defendant was born in 1965 in Brooklyn, New York, and is now

43 years old.  He experienced an itinerant childhood with his mother, his sister and three half-siblings, who were fathered by three different men.  At the age of 12, he began using marijuana, and at the age of 15, he was using marijuana on a daily basis, along with angel dust, heroin, powder cocaine and crack cocaine. Defendant was arrested several times as a juvenile for crimes such as robbery, unlicensed driving, attempted theft, drug sale, and burglary, which led to a few convictions and a custodial term in a juvenile detention facility.  While in this facility, defendant earned his GED.

At the age of 20, defendant was arrested, along with his mother, sister and two half-sisters, subsequent to a 1986 raid of multiple residences and vehicles, which uncovered a large quantity of controlled substances, related paraphernalia, firearms, stolen property and large sums of currency.  Defendant was charged with several drug offenses and a stolen property offense (but no crimes involving firearms or violence) and was convicted after trial on all counts.  He was sentenced to a fifteen-year custodial sentence, out of which he served ten years.  While in prison, defendant completed a substance abuse program, became a substance abuse counselor, and completed a number of college courses at Mercer Community College, stopping nine credits short of an associate degree.  Defendant maintains that when he left prison in 1996, he resolved to remain drug-

free, and that he did not resume using drugs until 2005.  As
noted below, however, he was arrested for attempted sale of drugs
in 2001.

After leaving prison, defendant moved in with his
girlfriend, Michelle Bivens.  He became a father figure to Ms.
Bivens' two children, as well as a father to a daughter with Ms.
Bivens.  In addition, the couple took custody of defendant's son
from a teenage relationship, of whose existence defendant did not
learn until the child was seven years old.  A few years later,
the couple took in defendant's 12- and 14-year-old nephews, as
their mother, defendant's sister, was struggling with drug
addiction.  Ms. Bivens, her children, defendant's daughter and
nephews, defendant's sister, and a number of other relatives and
friends have submitted detailed letters to the Court attesting to
defendant's commitment as a father and attributing the children's
success in school and college to defendant's support and
encouragement.

In 2000, defendant obtained and began to run his own
cleaning franchise.  In 2001, however, Ms. Bivens was
hospitalized with life-threatening complications from surgery.
Defendant remained with Ms. Bivens in the hospital for two
months, and upon her release, ceased working to assist her during
her intensive physical therapy.  As a result, his business
foundered.  Also in 2001, defendant was arrested in Florida for

an attempted drug sale.  He was convicted and received a sentence of three years' probation.  There is no evidence that the crime involved actual or threatened violence or the use of firearms. Defendant states that the 2001 arrest prompted him to focus on leading a law-abiding life and running his cleaning business.

In 2002, defendant obtained another cleaning franchise, which he owned and operated from 2002 to 2006.  However, defendant's personal life took a turn for the worse in 2005. Defendant reunited with Michael Harris, his older brother and co-defendant in the offense at issue here, who had been raised by an adopted family.  Defendant's business faltered, and he began using drugs again.  His relationship with Ms. Bivens deteriorated and eventually ended when Mr. Harris informed Ms. Bivens that defendant was involved with another woman.  Defendant thereafter lodged with relatives and friends, finally moving in with co-defendant Belinda Cueto, with whom he was romantically involved. Defendant and Ms. Cueto engaged in a "drug lifestyle" together, sometimes spending $50 to $300 a day on cocaine.

The Instant Offense

In August of 2007, with the encouragement of his brother, co-defendant Harris, defendant contacted a former prison companion and drug dealer in Colombia looking for work.  He was told to expect a call within a few days, regarding a package that defendant would pick up and either deliver to another person, or

hold and wait for another person to retrieve. For his participation, defendant expected to receive an unspecified sum of money, which he states he intended to split with co-defendant Harris.

On August 16, 2007, defendant received a call from co-defendant Cesar Navia, who used a pre-arranged code to advise defendant that he was the courier sent by the contact in Colombia. Because defendant does not speak Spanish, he asked his girlfriend, co-defendant Cueto, to translate the calls for him. Unbeknownst to defendant, co-defendant Navia had been arrested and detained at JFK airport, where he agreed to cooperate with authorities.

Later that day, law enforcement agents observed defendant and co-defendant Cueto enter the hotel where co-defendant Navia had told them he was staying. According to defendant, defendant and co-defendant Cueto decided to leave the hotel because defendant sensed that "everything was not right." Defendant spoke with co-defendant Harris, and according to the PSR, relayed the name of the hotel and co-defendant Navia's room number to him. Defendant maintains that co-defendant Harris insisted on going to retreive the drugs after defendant and co-defendant Cueto left the hotel.

Upon arriving at the hotel, co-defendant Harris entered the hotel and proceeded to co-defendant Navia's hotel room. Agents

subsequently entered the room and detained co-defendant Harris.
Co-defendant Harris informed the agents that he was defendant's
brother and that defendant had sent him to retrieve luggage from
Navia's hotel room, which he suspected involved narcotics.
Harris agreed to attempt to make a controlled delivery of the
drugs to defendant, but after making numerous telephone calls to
defendant, he was unable to do so.

Later that day, co-defendant Navia placed several telephone
calls to defendant regarding delivery of the package and Navia's
payment.  That evening, defendant and co-defendant Cueto returned
to the hotel and entered co-defendant Navia's room, where they
were detained by law enforcement authorities.  According to the
PSR, defendant acknowledged in a statement to authorities that he
had provided co-defendant Harris with co-defendant Navia's hotel
address and room number, and that he was also at the hotel to
pick up a package, which he knew involved either money or drugs.

On September 14, 2007, Bruce Hodges was named in multiple
counts of an indictment.  He pled guilty on January 28, 2008 to a
lesser-included offense within Count One of the indictment,
charging him with conspiracy to import an unspecified amount of
heroin into the United States, in violation of 21 U.S.C. § 963.

Guidelines Calculation

The November 1, 2007 edition of the United States Sentencing
Commission, Guidelines Manual ("U.S.S.G.") has been used in this

case for calculation purposes, in accordance with U.S.S.G. §
1B1.11(a).

The guideline for a violation of 21 U.S.C. § 963 is found in
U.S.S.G. § 2D1.1(a)(3), which specifies that the base offense
level is set in accordance with the Drug Quantity Table under
U.S.S.G. § 2D1.1(c)(4).  The PSR indicates that the amount of
heroin for which defendant should be held accountable is between
1 and 3 kilograms of heroin.  Pursuant to the Drug Quantity
Table, the base offense level is 32.

The PSR and the government also urge that a two-level role
enhancement should be applied pursuant to U.S.S.G. § 3B1.1(c) for
defendant's leadership role.  The PSR states that defendant
"provided instructions" to two co-defendants regarding the
delivery of and payment for the heroin, using another co-
defendant as a translator.  In one of its submissions, however,
the government twice concedes that defendant is "perhaps not the
ultimate leader" of the conspiracy, although he "supervised the
pick up of the drugs."  *See* Gov't Ltr. of January 23, 2009 at 3-
4, 9.  Nor does the plea agreement contemplate a leadership role
enhancement.  Defendant submits that he "had no role regarding
giving money to the courier," and that the only instruction he
gave to the co-defendant who transported the heroin from Colombia
to the United States was to "stay put at the hotel."  He alleges
that he intended to retrieve the drugs, and then hold onto the

them until someone contacted him to pick them up or to give him further instructions. *See* Def.'s Memo. dated Oct. 27, 2008, Ex. 5C ("Factual Objections to the Presentence Report").

The commentary to U.S.S.G. § 3B1.1 reveals that the leadership role adjustment guideline is included "primarily because of concerns about relative responsibility," but notes that "it is also likely that persons who exercise a supervisory or managerial role in the commission of an offense tend to profit more from it[.]" With the exception of co-defendant Cueto, whose involvement in the conspiracy appears to be limited to the translation of conversations between defendant and co-defendant Navia and to traveling with defendant, there is no evidence that defendant bore significantly more responsibility than his co-conspirators, nor is there evidence that he stood to profit from the crime more than his co-defendants. Defendant's role in the conspiracy appears to be limited to helping to coordinate the pick-up of drugs from a courier. Accordingly, I find that a leadership role enhancement is inappropriate here.[2]

---

[2] Defendant also argues that not only should I refrain from imposing a two-level leadership role enhancement, but that I should also apply a two-level minor role adjustment pursuant to U.S.S.G. § 3B1.2(b), on the grounds that his "involvement in the case occurred over a relatively short period, and consisted essentially of picking up drugs from a courier" and that he "had no ownership interest in the drugs, had no knowledge of the full structure of the drug distribution scheme, and had no decision-making authority." Def.'s Memo. dated Oct. 27, 2008 at 17 n.4. The commentary to U.S.S.G. § 3B1.2 states that a minor role adjustment may be appropriate where a defendant "is less culpable than most other participants[.]" Considering the available evidence as a whole, I find that defendant is not less culpable than most of his co-conspirators.

According to the PSR, defendant fits the criteria of a career offender.  Pursuant to U.S.S.G. § 4B1.1,

> A defendant is a career offender if (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1.  As defendant was more than eighteen years of age at the time of the instant controlled substance offense and has two prior controlled substance convictions not arising out of the instant offense conduct, he is a career offender within the meaning of U.S.S.G. § 4B1.1(a).

Where the offense level for a career offender calculated pursuant to the table under U.S.S.G. § 4B1.1(b) is greater than the offense level otherwise applicable, the offense level from the table shall apply.  In accordance with that table, because the maximum term of imprisonment for the crime with which defendant is charged is 20 years, *see* 21 U.S.C. § 960(b)(3), the offense level determined under § 4B1.1(b) is 32.  Because this level is not greater than the otherwise applicable offense level, which is also 32, no adjustment is necessary under U.S.S.G. § 4B1.1(b).

Based on defendant's plea allocution, defendant has shown recognition of responsibility for the offense.  Because he timely notified the government of his intention to plead guilty, and

because the base offense level is greater than 16, the offense level is reduced by three levels pursuant to U.S.S.G. §§ 3E1.1(a) and 3E1.1(b) to 29.[3]

The PSR shows that defendant's criminal history falls into category III. However, U.S.S.G. § 4B1.1(b) provides that "[a] career offender's criminal history category in every case under this subsection shall be Category VI." U.S.S.G. § 4B1.1(b). As previously discussed, defendant fits the criteria of a career offender, and accordingly, his criminal history category is elevated to VI. *See, e.g.*, *United States v. Wheeler*, No. 04CR.424-15, 2004 WL 2646625, at *4 (S.D.N.Y. Nov 18, 2004) (applying the criminal history category enhancement where the offense level set forth in the table under § 4B1.1(b) was lower than the offense level otherwise calculated and, thus, inapplicable); *United States v. Marseille*, 377 F.3d 1249, 1252-53 (11th Cir. 2004) (same); *but see United States v. Winbush*, 264 F.Supp.2d 1013, 1016 n.5 (N.D.Fla. 2003) (noting that the criminal history category enhancement set forth in § 4B1.1(b) applies, by its terms, only to those cases "under this subsection" and concluding that a defendant whose offense level exceeded the offense level otherwise applicable under subsection (b) was not being sentenced "under this subsection," and,

---

[3] The government has undertaken to move pursuant to § 3E1.1(b) for a further 1-point reduction.

therefore, that the criminal history category enhancement was inapplicable).

Based on the offense level of 29 and a criminal history category of VI, the guideline range for imprisonment is 151 to 188 months. Pursuant to U.S.S.G. §§ 5D1.1(a), 5D1.2(c) and 21 U.S.C. § 960(b)(3), a term of supervised release of at least 3 years is required. The defendant is not eligible for probation under U.S.S.G. § 5B1.1(a), as the minimum term in the guideline sentence range is greater than 6 months.

Although 21 U.S.C. § 960(b)(3) authorizes the imposition of a fine up to $1 million, because the PSR indicates that defendant is unable to pay a fine, none need be imposed pursuant to U.S.S.G. §§ 5E1.2(a). A special assessment of $100 is mandatory, pursuant to 18 U.S.C. § 3013.

Consideration of the § 3553 Factors

Having engaged in the Guideline analysis, I also give due consideration to the remaining factors identified in 18 U.S.C. § 3553(a) in order to impose a sentence "sufficient, but not greater than necessary" as is required in accordance with the Supreme Court's decision in *Booker* and the Second Circuit's decisions in *Crosby* and *Cavera.* In particular, § 3553(a)(1) asks that the sentence imposed consider both "the nature and circumstances of the offense and the history and characteristics of the defendant," while section 3553(a)(2)(A) demands that the

penalty "provide just punishment for the offense" that
simultaneously "afford[s] adequate deterrence to criminal
conduct" as required by § 3553(a)(2)(B).

There is no question that participating in a conspiracy to
import heroin is a serious offense, and the public has an
interest in deterring such criminal conduct.  Defendant argues,
however, that he should receive a sentence below the applicable
Guidelines range, because his prior criminal convictions are
interrelated with his long history of drug addiction and because
the convictions relied upon in concluding that he is a career
offender pursuant to U.S.S.G. § 4B1.1(a) are remote, and, as
such, are given too much weight in the criminal history
calculation, thus over-representing the seriousness of
defendant's prior criminal history.

In formulating the Guidelines, the Sentencing Commission
recognized the potential harm of overstating a defendant's
criminal history and thus exposing the defendant to punishment
far in excess of what may be necessary to deter recidivism.
Pursuant to U.S.S.G. § 4A1.3(b)(1),

> If reliable information indicates that the defendant's
> criminal history category substantially over-represents the
> seriousness of the defendant's criminal history or the
> likelihood that the defendant will commit other crimes, a
> downward departure may be warranted.

U.S.S.G. § 4A1.3(b)(1).  A downward departure under this section
may be appropriate "if, for example, the defendant had two minor

misdemeanor convictions close to ten years prior to the instant offense and no other evidence of prior criminal behavior in the intervening period." U.S.S.G. § 4A1.3 comment. n.3; *see also United States v. Carrasco*, 313 F.3d 750, 757 (2d Cir. 2002) ("This type of departure [pursuant to § 4A1.3] is most frequently used when a series of minor offenses, often committed many years before the instant offense, results in a [criminal history category] that overstates the seriousness of the defendant's prior record.") Factors to consider in granting a downward departure under § 4A1.3 may include "the amount of drugs involved in [the defendant's] prior offenses, his role in those offenses, the sentences previously imposed, and the amount of time previously served compared to the sentencing range called for by placement in [criminal history category] VI." *United States v. Mishoe*, 241 F.3d 214, 219 (2d Cir. 2001).

Horizontal downward departures under § 4A1.3 are limited in their extent, as they may not exceed one criminal history category for any defendant deemed a career offender pursuant to U.S.S.G. § 4B1.1. *See* U.S.S.G. § 4A1.3(b)(3)(A). Under the circumstances present here, however, the Second Circuit has authorized vertical downward departures under U.S.S.G. § 5K2.0(b). *See, e.g.*, *United States v. Rivers*, 50 F.3d 1126, 1131 (2d Cir. 1995) (noting that "in the case of a defendant whose offense level is raised by his criminal history into career

offender status, [the district court's] discretion may be exercised, to the extent thought appropriate, to reduce either the criminal history category or the offense level, or both" where the sentence called for by the guidelines over-represents the seriousness of the defendant's prior criminal history); *see also Mishoe*, 241 F.3d at 220 ("In some circumstances, a large disparity in that relationship [between the punishment prescribed by criminal history category VI and the degree of punishment imposed for prior offenses] might indicate that the career offender sentence provides a deterrent effect so in excess of what is required in light of the prior sentences and especially the time served on those sentences as to constitute a mitigating circumstance present 'to a degree' not adequately considered by the Commission") (citing 18 U.S.C. § 3553(b)).

While the Sentencing Commission and the aforementioned cases discuss the appropriateness of departing downward within the Guidelines, such analysis preceded the Supreme Court's decision in *Booker*. Now, post-*Booker*, the Guidelines are advisory, and a sentencing court must consider the Sentencing Commission's intent as just one of several salient factors, see 18 U.S.C. § 3553(a)(5)(A), in determining whether to impose a Guideline sentence or a non-Guideline sentence and the length of such sentence.

Clearly, the Sentencing Commission intended that the

sentencing court exercise discretion in determining the
appropriateness of categorizing a defendant as a career offender,
an intention echoed by the Second Circuit, and expected that the
sentencing court would reduce a defendant's range of punishment
if the career offender designation were misplaced.  In this case,
defendant's label as a career offender is, in fact, misplaced.[4]

Defendant is a drug addict.  He has suffered from multiple
addictions throughout his adolescence and much of his adult life,
and all of his criminal convictions stem from drug-related
activity.  He has never been accused, arrested or convicted for
any crime of violence.  After his release from prison in 1996,
defendant secured a job and eventually founded his own
businesses, supporting his family for nearly ten years.  Multiple
members of defendant's family, friends, and colleagues have
written detailed letters to the Court attesting to defendant's

---

[4] Defendant also argues that the career offender guidelines are
fundamentally flawed because they are not a product of the empirical and
experiential study typical of the Sentencing Commission's work, and because
they exceed their Congressional mandate by expanding the express terms under the
enabling statute, 21 U.S.C. § 944(h), to include offenses not listed in the
statute.  Def.'s Memo. at 11-17.  The government opposes this argument on the
grounds that because Congress directed the Sentencing Commission to set
sentences for defendants qualifying as career offenders at or near the
statutory maximum, there was no need for the Commission to utilize empirical
data in crafting the career offender guidelines, and the Commission's
definitional expansion of triggering offenses is within its promulgation
powers and has been upheld by the majority of Courts of Appeal.  Gov't Ltr.
dated Jan. 23, 2009, at 5-8.  Because I find that defendant is not the type of
criminal Congress or the Sentencing Commission intended to incapacitate under
the career offender guidelines, *see, e.g.*, *United States v. Chartier*, 970 F.2d
1009 (2d Cir. 1992) (noting that legislative history explains that basis for
career offender guidelines was congressional instructions to Sentencing
Commission to "incapacitat[e] the tiny minority of criminals responsible for
the overwhelming majority of violent crimes"), I need not decide whether the
career offender guidelines themselves are fundamentally flawed.

commitment as a father and to his community during this period.
Following defendant's reunion with his brother, co-defendant
Harris, however, as well as the deterioration of his relationship
with his girlfriend of many years, defendant relapsed into drug
use in 2005 and his business collapsed. As a drug addict with
limited job opportunities, defendant attempted to support his
drug habit by selling drugs.

The fact that defendant's prior criminal convictions may
have been influenced by or the result of his addiction to drugs
does not provide a sufficient basis for departure under the
Guidelines. "Drug or alcohol dependence or abuse is not a reason
for a downward departure." U.S.S.G. § 5H1.4; *see also* U.S.S.G. §
5K2.0(d)(1) (prohibiting departures based on drug or alcohol
dependence or abuse); *accord United States v. Payton*, 159 F.3d
49, 61 (2d Cir. 1998). However, *post-Booker*, such prohibitions
merely provide guidance to the sentencing court, and defendant's
personal "history and characteristics" must also be considered
under 18 U.S.C. § 3553(a)(1).

Furthermore, the Guideline prohibition against considering a
defendant's drug addiction does not affect a sentencing court's
authority to factor in the remoteness of a defendant's
convictions in determining whether he ought to be classified as a
career offender. Defendant's most serious conviction occurred
when he was 20 years old, 21 years prior to the instant offense.

He served ten years for the offense.  Defendant's intervening
conviction occurred six years prior to the instant offense and
did not result in a custodial sentence.  Now, at the age of 43,
defendant faces a Guideline sentence of roughly 12.5 to 15.5
years in prison.  The disparity between defendant's age at the
time of his prior convictions versus the instant offense, as well
as time served with regard to defendant's earlier convictions and
the sentence dictated here by the career offender categorization,
is significant.

In addition, when considering the advisory Guideline range,
I also consider what defendant's Guideline range would have been
without his career offender designation, given the Sentencing
Commission's policy statement warning of the potential
over-representation of criminal history due to such designation
and given the remoteness in time of defendant's two prior
convictions.  Without his career offender designation,
defendant's criminal history category would have been III.  The
resulting sentencing range would have been 108 to 135 months, a
substantially lesser sentence than his current Guideline
sentencing range of 151 to 188 months.

The goal of the career offender classification is to achieve
a deterrent effect and to address adequately the concerns
regarding recidivism that are reflected in that classification
scheme.  As the Second Circuit noted in *Mishoe*,

> Obviously, a major reason for imposing an especially long sentence upon those who have committed prior offenses is to achieve a deterrent effect that the prior punishments failed to achieve. That reason requires an appropriate relationship between the sentence for the current offense and the sentences, particularly the times served, for the prior offenses.

241 F.3d at 220. Defendant spent ten years incarcerated as a young man. While a term of imprisonment of greater than ten years would normally be appropriate to achieve the deterrent effect underlying the career offender designation, I note that post-*Booker*, courts have observed that recidivism is markedly lower for older defendants. *See, e.g.*, *U.S. v. Eberhard*, 03 CR. 562, 2005 WL 1384038, at *10 n.3 (S.D.N.Y. June 9, 2005); *U.S. v. Coleman*, 370 F.Supp.2d 661, 681 (S.D.Ohio 2005); *Simon v. U.S.*, 361 F.Supp.2d 35, 48 (E.D.N.Y. 2005); *U.S. v. Hernandez*, 03 CR. 1257, 2005 WL 1242344, at *5 (S.D.N.Y. May 24, 2005); *U.S. v. Carmona-Rodriguez*, 04 CR 667, 2005 WL 840464, at *5 (S.D.N.Y. Apr. 11, 2005); *U.S. v. Nellum*, 2:04-CR-30, 2005 WL 300073, at *3 (N.D.Ind. Feb. 3, 2005). At the age of 43, defendant is substantially older than the average defendant charged with drug trafficking. The Guidelines do not take into account the inverse relationship between age and recidivism. Accordingly, I will also take into account defendant's age in fashioning his sentence.

Balancing the need for meaningful deterrence with section 3553(a)'s statutory demand to "impose a sentence sufficient, but

not greater than necessary, to comply with the purposes" of sentencing, *see* 18 U.S.C. § 3553(a), I find that a non-Guideline sentence is warranted. *See United States v. Carvajal*, No. 04 CR 222, 2005 WL 476125, at *5 (S.D.N.Y. Feb. 22, 2005) (stating, "But [the Career Offender guidelines] are excessive, in light of the nature of [defendant's] recidivism, for the Guidelines for Career Offenders are the same regardless of the severity of the crimes, the dangers posed to victims' and bystanders' lives, and other appropriate criteria. A sentence that satisfies only the Guidelines would be 'greater than necessary, to comply with the purposes' set forth in the statute"); *United States v. Sanchez*, 517 F.3d 651, 664-65 (2d Cir. 2008) ("[W]e conclude that Congress did not intend § 944(h) to deprive the courts of authority to impose on a career offender a prison term that is not near the statutory maximum").

## CONCLUSION

For the foregoing reasons, I will at sentencing consider a non-guidelines sentence. The Clerk is directed to transmit a filed copy of the within to the parties.

SO ORDERED.

Dated :  Brooklyn, New York
         February 12, 2009

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge